UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-11310
_____


LAMARILYN FADEYI,

Plaintiff-Appellant,

versus

PLANNED PARENTHOOD ASSOCIATION OF LUBBOCK, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Western District of Texas
_____
November 11, 1998

Before SMITH, DUHÉ, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

The sole issue in this appeal is whether a Texas employment-at-will relationship is a contract for the purposes of 42 U.S.C. § 1981. The district court dismissed Plaintiff-Appellant LaMarilyn Fadeyi's § 1981 claims after concluding that her at-will employment with Defendant-Appellee Planned Parenthood Association of Lubbock, Inc. ("Planned Parenthood") was not a "contract" under § 1981. Satisfied that in Texas an at-will employment relationship is a contract for purposes of § 1981, we reverse and remand.

I.

FACTS AND PROCEEDINGS

Fadeyi is a black female who was employed by Planned Parenthood for seven years. She alleges that Planned Parenthood engaged in various acts of racial discrimination against her during the course of her employment, ranging from discriminatory scheduling and distribution of office resources to the executive director's giving her and another black employee an application for membership in the Ku Klux Klan. Fadeyi filed complaints with the Equal Employment Opportunity Commission and the Texas Commission on Human Rights, but both dismissed her complaints for lack of jurisdiction because Planned Parenthood had fewer than 15 employees at all relevant times. Planned Parenthood fired Fadeyi two working days after receiving notification that the EEOC did not have jurisdiction to entertain her complaints.

Fadeyi then brought suit in district court under § 1981, alleging racial discrimination in her employment and termination. Planned Parenthood filed a motion for summary judgment, arguing that Fadeyi's claim should fail because she could not show the existence of a contract, an essential element in a § 1981 action. The district court agreed and granted Planned Parenthood's motion. Fadeyi timely filed this appeal.

II.

ANALYSIS

A.    Standard of Review

We review a district court's grant of summary judgment de novo.[1]

B.    Applicable Law

Fadeyi contends that § 1981 supports her claim for racial discrimination regardless of the fact that she was an at-will employee.  Section 1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."[2]  Because Title VII applies only to employers with 15 or more employees,[3] § 1981 provides the only refuge under federal law from race-based employment discrimination by those who hire fewer than 15 employees.[4]

In Patterson v. McLean Credit Union,[5] the United States Supreme Court concluded that § 1981 covered "only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process."[6]

---

[1]    Exxon Corp. v. St. Paul Fire and Marine Ins. Co., 129 F.3d 781, 784-85 (5th Cir. 1997).

[2]    42 U.S.C. § 1981(a).

[3]    See 42 U.S.C. § 2000e(b).

[4]    See H.R. Rep. No. 102-40(I), 102d Cong., 1st Sess., at 91 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 629.

[5]    491 U.S. 164 (1989).

[6]    Id. at 179.

3

Consequently, the Court held that § 1981 does not cover racial harassment by an employer after the inception of the employment relationship.[7]  In response to Patterson, Congress, through the Civil Rights Act of 1991, amended § 1981 to add a broad definition of the phrase "make and enforce contracts," which includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[8]  Relying on this expansive language, Fadeyi argues that Congress intended to reach the very conduct that plagued her at Planned Parenthood during her employment and in her termination.

The district court, however, dismissed Fadeyi's complaint, concluding that, as an at-will employee, Fadeyi had no "contract" of employment on which to base a claim under § 1981.  Under well-established Texas law, the employer may, absent a specific agreement to the contrary, terminate an employee for good cause, bad cause, or no cause at all.[9]  It does not necessarily follow, however, that the employment-at-will relationship is not a contractual one for the purposes of § 1981.

Case law addressing whether an at-will employee may bring an action under § 1981 is surprisingly sparse.  Despite the fact that more than 40 states recognize the employment-at-will

---

[7]    Id. at 178.

[8]    See 42 U.S.C. § 1981(b).

[9]    See Federal Express Corp. v. Dutschmann, 846 S.W.2d 282, 283 (Tex. 1993) (per curiam).

4

relationship, no circuit court has squarely resolved this issue in the wake of Patterson,[10] and the federal district courts that have done so have come to differing results.[11]  We conclude that the better view is that, irrespective of being subject to at-will termination, such an employee stands in a contractual relationship with his employer and thus may maintain a cause of action under § 1981.

In Patterson, the United States Supreme Court implicitly conceded that an at-will employee may maintain a cause of action under § 1981.  Although, as discussed above, the Patterson Court declined to recognize work place racial harassment as actionable

_____

[10]    See Gonzales v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1035 (7th Cir. 1998) (noting, but finding no need to hold, that under Illinois law an employee at-will has no contractual rights to support a claim under § 1981); but see Adams v. McDougal, 695 F.2d 104, 108 (5th Cir. 1983) (holding that under Louisiana law the indefinite term of employment of an appointed deputy sheriff was "sufficiently contractual to bring [the deputy] under the protective umbrella of § 1981").

[11]    We recognize that federal case law interpreting at-will employment relationships in other states is not binding on the court.  We find the decisions informative, however, as the overwhelming majority of states recognize the traditional common law doctrine of employment at-will.  Compare Lane v. Ogden Entertainment, Inc., 13 F. Supp. 2d 1261, 1272 (M.D. Ala. 1998) (holding that an at-will employee may bring a cause of action under § 1981); Larmore v. RCP/JAS, Inc., 1998 WL 372647, *2 (E.D. Pa. 1998) (same); Baker v. American Juice, Inc., 870 F. Supp. 878, 883 (N.D. Ill. 1994) (same); Harris v. New York Times, 1993 WL 42773 (S.D.N.Y. 1993)(same); with Hawkins v. Pepsico, Inc., 10 F. Supp. 2d 548, 554 (M.D.N.C. 1998) (holding that no contract exists in an at-will employment relationship to support a cause of action under § 1981); Moorer v. Grumman Aerospace Corp., 964 F. Supp. 665, 675 (E.D.N.Y. 1997) (same), aff'd, 1998 WL 640438 (2d Cir. 1998); Spriggs v. Diamond Auto Glass, 1997 WL 880756, *1 (D. Md. 1997) (same); Askew v. May Merchandising Corp., 1991 WL 24390, *6 (S.D.N.Y. 1991) (same).

5

under § 1981,[12] it acknowledged that Patterson, an at-will employee, might have a cause of action based on the claims that her employer failed to promote her based on her race.[13]  The Court stated that "the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.  If so, then the employer's refusal to enter the new contract is actionable under § 1981."[14]  This language leaves no doubt that the Court considered the employee's relationship with her employer to be a contractual one: Obviously, there can be no "new contract" unless there is first an old <u>contract</u>.[15]

Justice Stevens, writing separately in <u>Patterson</u>, explained his understanding of the nature of the at-will employment relationship in the context of § 1981:

> An at-will employee, such as petitioner, is not merely performing an existing contract; she is constantly remaking that contract. . . . . [W]hether employed at will or for a fixed term, employees typically strive to achieve a more rewarding relationship with their employers.  By requiring black employees to work in a hostile environment, the employer has denied them the same opportunity for advancement that is available to white citizens.  A deliberate policy of harassment of black employees who are competing with white citizens

---

[12]     See <u>Patterson</u>, 491 U.S. at 178.

[13]     <u>Id.</u> at 185.

[14]     <u>Id.</u>

[15]     See <u>Harris</u>, 1993 WL 42773, at *4 (suggesting that this portion of <u>Patterson</u> demonstrates that "the Court regarded Patterson's relationship with her employer . . . as sufficiently contractual in nature to satisfy § 1981").

6

is, I submit, manifest discrimination in the making of contracts in the sense in which that concept was interpreted in <u>Runyon v. McCrary</u>. [427 U.S. 160 (1976)].[16]

This appears to be the approach embraced by Congress when it overruled <u>Patterson</u>, a scant two years after that opinion was rendered, by amending § 1981 in the Civil Rights Act of 1991. The legislative history of the amendments to § 1981 reflects the intent of Congress to protect minorities in their employment relationships. For example, the report of the House Judiciary Committee stated that the 1991 amendments were "designed to restore and strengthen civil rights laws that ban discrimination in employment. . . . By restoring the broad scope of Section 1981, Congress will ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race."[17] To hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII.

Texas law firmly supports the contractual nature of an at-will employment relationship as well. The Texas Supreme Court has recognized that an at-will employment relationship is a contract, notwithstanding that either party may terminate it at

---

[16]    491 U.S. at 221 (Stevens, J., concurring in part and dissenting in part).

[17]    H.R. Rep. No. 102-40(II), 102d Cong., 1st Sess., at 2 (1991), <u>reprinted in</u> 1991 U.S.C.C.A.N. 694, 694.

will. In <u>Sterner v. Marathon Oil Co.</u>,[18] the Texas Supreme Court held that an at-will employee could maintain a cause of action for tortious interference with contract against a third party who interfered with the employment relationship.[19] As the court explained,

> A promise may be a valid and subsisting contract even though it is voidable. . . . A similar situation exists with regard to contracts terminable at will. Until terminated, the contract is valid and subsisting, and third persons are not free to tortiously interfere with it.[20]

In other words, an employment-at-will relationship is a contractual one, even though either party can terminate it without cause at any time.[21]

We have also recognized, in applying the Texas Whistleblower Act, that an at-will employee in Texas has a contract with her employer.[22] The Texas Whistleblower Act applies to "public employees," and at the time that <u>Knowlton v. Greenwood Indep.</u>

---

[18]    767 S.W.2d 686, 689 (Tex. 1989).

[19]    <u>See</u> <u>id.</u> at 689.

[20]    <u>Id.</u>

[21]    The Texas Supreme Court's opinion in <u>Light v. Centel Cellular Co.</u>, 883 S.W.2d 642 (Tex. 1994), relied on by the district court, is not to the contrary. In that case, the court considered whether a covenant not to compete was "ancillary to or part of . . . an otherwise enforceable agreement" under a Texas statute allowing covenants not to compete in limited circumstances. <u>Id.</u> at 643. The court simply concluded that an employment-at-will relationship was not an "otherwise enforceable agreement" that could support a covenant not to compete under the Texas statute. <u>Id.</u>

[22]    <u>See</u> <u>Knowlton v. Greenwood Indep. Sch. Dist.</u>, 957 F.2d 1172, 1181 (5th Cir. 1992) (applying Acts 1983, 68th Leg., R.S., ch. 832, §§ 1-6 (codified as amended at TEX. GOV'T CODE § 554.01–.09 (West 1994))(formerly TEX. REV. CIV. STAT. ANN. art. 6252-16a).

<u>Sch. Dist.</u>[23] was decided, defined "public employee" as "a person who performs services for compensation under a written or oral <u>contract</u> for a state or local government body."[24] In <u>Knowlton</u>, we concluded that the Act applied to at-will employees of a school district because those employees met the statutory definition of "public employee."[25] That is, the employees were persons "who perform[] services for compensation under a written or oral <u>contract</u> . . . ."[26] The El Paso court of appeals reached the same conclusion in <u>Permian Basin Community Centers for MHMR v. Johns</u>,[27] explaining that "[t]he at-will employment relationship is a contractual one, albeit one for an indefinite period of time."[28]

---

[23]    957 F.2d 1172 (5th Cir. 1992).

[24]    Acts 1983, 68th Leg., R.S., ch. 832, § 1 (emphasis added) (codified as amended at TEX. GOV'T CODE § 554.01(4)) (formerly TEX. REV. CIV. STAT. ANN. art. 6252-16a, § 1(3)).

[25]    See <u>Knowlton</u>, 957 F.2d at 1181.

[26]    <u>Id.</u> (emphasis added) (citation omitted).

[27]    951 S.W.2d 497, 500 (Tex. App.—El Paso 1997, no writ).

[28]    <u>Id.</u> In numerous other cases, the Texas courts have acknowledged the contractual nature of an at-will employment relationship. See, e.g., <u>Montgomery County Hosp. Dist. v. Brown</u>, 965 S.W.2d 501, 503 (Tex. 1998) (referring to the at-will employment relationship as an "employment contract"); <u>Hathaway v. General Mills, Inc.</u>, 711 S.W.2d 227 (Tex. 1986) (discussing the requirements for proving a modification of an "at will employment contract"); <u>see also</u> <u>Rodriquez v. Benson Properties, Inc.</u>, 716 F. Supp. 275, 276 (W.D. Tex. 1989) ("Texas courts have recognized that an employer/employee relationship is contractual in nature.") (citing <u>Pioneer Cas. Co. v. Bush</u>, 457 S.W.2d 165, 169 (Tex. Civ. App.—Tyler 1970, writ ref'd n.r.e.); <u>Northwestern Nat'l Life Ins. Co. v. Black</u>, 383 S.W.2d 806, 809 (Tex. Civ. App.—Texarkana 1964, writ ref'd n.r.e.)).

Both the Texas Supreme Court and the Texas Legislature have emphasized the importance of public policy when considering the breadth of the employment-at-will doctrine.  In Sabine Pilot Service, Inc. v. Hauck,[29] the Texas Supreme Court created the only non-statutory exception to the at-will employment relationship when it held that an at-will employee cannot be discharged for refusing to perform an illegal act ordered by his employer.[30]  The Texas Legislature has likewise enacted several statutory exceptions to the at-will doctrine to protect at-will employees from discriminatory practices in the workplace — most notably, a prohibition against discharging an individual based on race, color, disability, religion, sex, national origin, or age.[31]  The conclusion is clear that even though an at-will employee can be fired for good cause, bad cause, or no cause at all, he or she cannot be fired for an illicit cause.  Any seeming inconsistency in the determination that one who can be fired without cause neverthless cannot be fired for an unlawful cause evaporates under the foregoing analysis.

None can contest that discriminating against an employee on the basis of race is illegal and against public policy.  In amending § 1981, Congress was advancing such public policy

---

[29]     687 S.W.2d 733 (Tex. 1985).

[30]     Id. at 735.

[31]     TEX. LAB. CODE ANN. § 21.051 (West 1996); see also Hicks v. Utility Fuels, Inc., 1998 WL 752003, *3 n.1 (Tex. Civ. App.-Hous. 1998) (unpublished) (listing the statutory exceptions to the employment-at-will doctrine).

concerns by providing a vehicle for every employee to remedy racial discrimination in the workplace.  Congress could not have meant to exclude at-will workers from the reach of § 1981, as to do so would be to allow use of the ubiquitous at-will doctrine "as leverage to incite violations of our state and federal laws."[32]

We therefore conclude that the district court erred in granting summary judgment to Planned Parenthood solely on the basis that Fadeyi had no contract on which her § 1981 claims could rest.  Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

---

[32]    Hauck, 687 S.W.2d at 735 (Kilgarlin, J., concurring).