# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-1536

DENNIS WALKER,

*Plaintiff-Appellant*,

v.

ABBOTT LABORATORIES,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 3882—**Harry D. Leinenweber**, *Judge.*

_____

ARGUED MAY 20, 2003—DECIDED AUGUST 18, 2003

_____

Before COFFEY, KANNE, and DIANE P. WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* Dennis Walker appeals the district court's dismissal of his racial discrimination claim against his employer, Abbott Laboratories under 42 U.S.C. § 1981. Based on dicta in our decision in *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998), the district court granted Abbott's motion to dismiss on the ground that at-will employees cannot maintain claims under § 1981. For the reasons stated below, we find that at-will employment relationships are sufficiently contractual to support claims of racial discrimination in promotion and pay under § 1981; therefore, we reverse and remand the district court's decision.

## I.  History

The somewhat lengthy procedural history of this lawsuit began in 1997, when Ronald Payne, a former employee of Abbott filed a lawsuit on behalf of himself and all similarly situated African-American employees at Abbott. Pertinent to this appeal, a four-count Second Amended Complaint, which added Dennis Walker and Marvin Fields as new class representatives, was filed on June 25, 1998. In Count I, Walker and Fields, but none of the other named plaintiffs, raised individual claims of intentional racial discrimination in promotion and pay (but not termination) in violation of 42 U.S.C. § 1981; in Count II, Payne alleged an individual claim of retaliation under § 1981; in Count III, plaintiffs alleged a class claim of intentional discrimination under § 1981; and in Count IV, plaintiffs alleged a class claim of disparate-impact discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* No claims of disparate treatment under Title VII were raised.

On March 2, 1999, the district court granted Abbott's motion to dismiss the § 1981 claims on the ground that as at-will employees, plaintiffs had failed to plead a contractual basis for racial discrimination under § 1981. Further, the court struck the plaintiffs Title VII class allegations because the proposed class was overly broad and because plaintiffs failed to plead facts sufficient to describe the qualified population in the relevant labor market. The court, however, allowed plaintiffs to amend their complaint.

Plaintiffs' Third Amended Complaint was filed on May 21, 1999. This complaint pleaded and incorporated Counts I, II, and III—the § 1981 claims—of the Second Amended Complaint for the stated purpose of preserving those claims for appeal. Count IV alleged individual and class claims of discrimination in promotion and pay under a Title VII disparate-impact theory. Again, no allegations were made

based on a Title VII disparate-treatment theory. Abbott moved for partial dismissal of the complaint, and the court dismissed the claims of all plaintiffs except those of Walker and Fields[1] and allowed the class claim to go forward.

Abbott filed its answer to Count IV, denying the allegations of discrimination, and the parties proceeded with class discovery. At the conclusion of class discovery, plaintiffs filed a motion for class certification, which was denied. Walker and Fields did not amend their complaint, but decided to pursue only their individual claims of disparate impact under Title VII. At the close of discovery, Fields was voluntarily dismissed from the suit, and Abbott moved for summary judgment on the only remaining claim before the district court—Walker's individual Title VII disparate-impact claim. Walker did not challenge the motion for summary judgment, and the district court granted the motion.

Walker is the only named plaintiff in this action who chose to appeal. And the only issue that Walker now raises is whether the district court erred in its March 2, 1999 decision to dismiss his individual § 1981 claim based on Walker's status as an at-will employee.

## II. Analysis

### A. Procedural Issues

Before addressing the issue of whether an at-will employee can state a claim for discrimination in promotion and pay under § 1981, Abbott raises two procedural issues that it claims make a ruling on the merits unnecessary. First, Abbott argues that Walker has waived his § 1981 dis-

---

[1] Ronald Payne's retaliatory discharge claim was severed and transferred to the Southern District of Ohio, where Payne resided and had been employed by Abbott.

parate-treatment claim because he did not raise a *Title VII* disparate-treatment claim before pursuing this appeal. According to Abbott, when the district court ruled that at-will employees could not maintain a disparate-treatment cause of action under § 1981, Walker should have amended his complaint to raise a disparate-treatment claim under Title VII, which is governed by the same legal standards but does not require a contractual relationship. Thus, Abbott asserts, by not raising the Title VII disparate-treatment claim in the Third Amended Complaint, Walker has waived all intentional-discrimination theories—including his § 1981 claims. We find this argument wholly without merit.

Abbott cites no authority, nor could it, that a plaintiff waives his right to appeal the dismissal of a § 1981 claim because he failed to assert in the district court a Title VII disparate-treatment claim—an entirely different cause of action. The Civil Rights Statutes provide two separate methods to challenge an employer's intentional discrimination—§ 1981 and Title VII. *See Runyon v. McCrary*, 427 U.S. 160, 174 n.11 (1976) (recounting that the legislative history of the Civil Right Act of 1964 reveals that Title VII and § 1981 were meant to provide alternative remedies to civil-rights violations). Even though they may have the same liability standards, *see Bennett v. Roberts*, 295 F.3d 687, 697-98 (7th Cir. 2002) (citing *Gonzalez*, 133 F.3d at 1035), these two avenues of remedy are not identical. For instance, Title VII provides that absent a continuing violation, a plaintiff has only 300 days from the date of the discriminatory act in which to file a claim, *see* 42 U.S.C. § 2000e-5(e)(1) (2003); whereas § 1981 provides a two-year statute of limitations. Unlike Title VII, § 1981 does not require the filing of an EEOC charge before bringing an action in a federal court. Section 1981 claims are not subject to the same damage caps as Title VII claims. *See* 42 U.S.C. § 1981a (2003). Finally, Title VII is not available to

employees who work in relatively small businesses. *See* 42 U.S.C. § 2000e(b). To say that failure to pursue one of these avenues results in a waiver of the other, entirely separate avenue, is simply incorrect. For whatever reason, Walker pressed a disparate-treatment theory only under § 1981. He pursued this claim in the district court, and he properly preserved it for appeal. He was entitled to wait for a final judgment and then appeal the district court's ruling on that claim to this court. He has done just that.

The second procedural argument that Abbott makes is that Walker waived his challenge to the district court's dismissal of his § 1981 claim because he failed to ask the district court to reconsider its ruling in light of new decisions from other circuits. The district court dismissed the § 1981 claim based on dicta in *Gonzalez* in which this Court speculated that an at-will employment relationship may not be sufficiently contractual to sustain a claim under § 1981. 133 F.3d at 1035. In its ruling, the district court acknowledged that two other circuits had ruled that at-will employees could state claims under § 1981, *see Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018-19 (4th Cir. 1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1049-50 (5th Cir. 1998), but the district court stated that it felt compelled to follow *Gonzalez* rather than the cases from other circuits. After the district court's ruling, three more circuits decided that at-will employees could bring claims under § 1981. *See Skinner v. Maritz*, 253 F.3d 337, 342 (8th Cir. 2001); *Lauture v. Int'l Bus. Machs.*, 216 F.3d 258, 260 (2d Cir. 2000); *Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999). Abbott asserts that because Walker never sought to have the district court reconsider its earlier ruling in light of the contrary rulings by three additional circuits, we should hold that Walker has waived his right to challenge the district court's dismissal of the § 1981 claim. Again, we find this argument wholly without merit.

And again, Abbott cites absolutely no authority that creates an obligation to raise a motion to reconsider in order to preserve the argument for appeal.[2] There is simply no rule or case law that requires litigants to move for reconsideration of an interlocutory ruling in order to avoid waiving a challenge to that ruling on appeal of a final decision. Moreover, an analysis of the district court's ruling reveals that a motion to reconsider in light of new nonbinding authority likely would have been futile. The district court had already refused to follow two other circuits because it felt compelled to follow our dicta in *Gonzalez*. There is no reason to believe that the district court would have changed its decision when more nonbinding authority was brought to its attention.

We find that Walker did not waive his § 1981 claim by failing to raise a motion to reconsider or by failing to bring a Title VII disparate-treatment claim. Therefore, Walker has properly preserved his challenge to the district court's ruling for appeal, and we will now turn to the merits.

## B. At-Will Employees and § 1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (2003). In *Patterson v. McLean Credit Union*, the Supreme Court took a narrow view of the phrase "make and enforce contracts," holding that it meant § 1981's protections extended only to the formation of a contract and not to conduct occur-

---

[2] In fact, we note that there is no pleading called a "motion to reconsider" in the Federal Rules of Civil Procedure, though we generally construe such requests as being brought under Rule 59(e) or Rule 60(b). *See, e.g., United States v. Deutsch*, 981 F.2d 299, 300-01 (7th Cir. 1992).

ring after the contract was made. 491 U.S. 164, 176-77 (1989). Congress, however, quickly responded with the Civil Rights Act of 1991, which, *inter alia*, overruled *Patterson*, *see* H.R. REP. NO. 102-40 (II), at 2 (1991), *reprinted in* 1991 U.S.S.C.A.N. 694, 695, by providing a broad definition of the phase "make and enforce contracts."[3] Therefore, § 1981 now prohibits discrimination in a contractual relationship beyond the mere formation of the contract.

There is no dispute, however, that even as amended § 1981's protections still center on contractual rights and that proof of a contractual relationship is necessary to establish a § 1981 claim. *See Perry*, 199 F.3d at 1132; *Gonzalez*, 133 F.3d at 1034. The parties here do not dispute that Walker was an at-will employee and therefore that either party to the employment relationship could terminate his employment at any time. As noted above, in *Gonzalez*, this Court opined in dicta that an at-will employment relationship might not be sufficiently contractual to support § 1981 claims for discriminatory termination. 133 F.3d at 1035. We explicitly stated in our opinion, however, that we "need not determine" the issue because Gonzalez had provided no evidence of discrimination, and so her claim failed on that basis. *Id.*; *see also Staples v. Pepsi-Cola Gen. Bottlers, Inc.*, 312 F.3d 294, 298 n.3 (7th Cir. 2002) (noting that *Gonzalez* discussed the issue but ultimately left it "for another day"). Before *Gonazalez*, this Court in *McKnight v. GMC* took the view that "[e]mployment at-will is not a state of nature but a continuing contractual relation. . . . A contract for employment at will may end

---

[3] Congress did so by adding § 1981(b) to the act, which states: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b) (2003).

abruptly but it is a real and continuing contract none-theless." 908 F.2d 104, 109 (7th Cir. 1990). *Gonzalez* questioned the continued validity of this position since in *McKnight* we had relied on the now-overruled *Patterson* decision. *See Gonzalez*, 133 F.3d at 1035. Not surprisingly, Walker urges us to disregard the *Gonzalez* dicta and revive *McKnight*; whereas Abbott contends that we should follow *Gonzalez*.

We note that since our decision in *Gonzalez*, every circuit court to address the issue, five in all, have held that at-will employees can state claims under § 1981. *See Skinner*, 253 F.3d at 342; *Lauture*, 216 F.3d at 260; *Perry*, 199 F.3d at 1133; *Spriggs*, 165 F.3d at 1018-19; *Fadeyi*, 160 F.3d at 1049-50. Much as we did in *McKnight*, these courts have found that at-will employment, though capable of being terminated by either party at any time, is nonetheless a contractual relationship.

Our review of § 1981's statutory language reveals no intent by Congress to give the word "contract" in § 1981 any specialized meaning; thus, we must assume that the ordinary meaning was intended. *See Lauture*, 216 F.3d at 261; *Spriggs*, 165 F.3d at 1018. According to the Second Restatement of Contracts, a contract is "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." RESTATEMENT (SECOND) OF CONTRACTS § 1 (1981). Several courts have recognized that under this def-inition, at-will employment creates a contract because the employer promises to pay the employee for certain work and the employee accepts the offer by beginning work. *See, e.g., Skinner*, 253 F.3d at 340 ("[Employer] offered, either implicitly or explicitly, to pay [plaintiff] for performance of services. [Plaintiff] accepted that offer by performance."); *Lauture*, 216 F.3d at 261 ("[Plaintiff's] promise to work for [employer], as consideration for [employer's] promise to pay

her, was a contract."); *Spriggs*, 165 F.3d at 1018 ("[Plaintiff's] performance of the assigned job duties was consideration exchanged for [employer's] promise to pay. The parties' actions thus created a contractual relationship."). There is no dispute that this is the situation here: Abbott employed Walker on an at-will basis, offering, either implicitly or explicitly, to pay him for the performance of specified work, and Walker accepted that offer by either promising to or actually performing the work.

The lack of a fixed duration of employment does not make the relationship any less contractual. As we noted in *McKnight*, at-will employees, though capable of losing or quitting their employment at any time, are not totally without enforceable contractual rights: "Wages, benefits, duties, working conditions, and all (but one) of the other terms are specified and a breach of any of them will give the employee a cause of action for breach of contract." 908 F.2d at 109 (citation omitted). As another court noted, in all at-will employment relationships, employees maintain "the right to treat the employer's failure to pay for work done by the employee prior to termination of the employment relationship as a breach of contract." *Skinner*, 253 F.3d at 341-42. Moreover, the Restatement contemplates that at-will employment relationships are contractual even though they lack a term of duration. *See* RESTATEMENT (SECOND) OF CONTRACTS § 33 cmt. d, illus. 6 (1981); *see also Spriggs*, 165 F.3d at 1018.

Some courts have looked to the state-law definition of "contract" to cast further light on whether at-will employees have sufficient contractual rights to maintain § 1981 claims. *See, e.g.*, *Skinner*, 253 F.3d at 340 (finding that under Missouri law the plaintiff's at-will employment "had all the essential elements of a valid contract"); *Fadeyi*, 160 F.3d at 1050 (same under Texas law). Walker contends that Illinois law recognizes at-will employment relationships as contractual, and Abbott makes no argument to the contrary. From our review of the case law, it does appear that

Illinois courts generally treat at-will employment relation-ships as contractual in nature. *See, e.g.*, *Fellhaver v. Geneva*, 568 N.E. 2d 870, 878 (Ill. 1991) (recognizing em-ployment at will as a contract for employment with an indefinite duration); *cf. Callis, Papa, Jackstadt, and Halloran. P.C. v. Norfolk & W. Ry.*, 748 N.E. 2d 153, 161 (Ill. 2001) ("The relationship between the law firm and [employee] is a contractual, at-will relationship. Until such a relationship is terminated, the at-will contract is of value to the law firm.").

Finally, a finding that at-will employees cannot state a § 1981 claim would appear to contravene Congress's inten-tion in the Civil Rights Act of 1991 to "restor[e] the broad scope of Section 1981 [to] ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race." H.R. Rep. No. 102-40 (II), at 2 (1991). Congress's intent to secure protection of all employees is further evident in its explicit disapproval of the way in which the Supreme Court in *Patterson* limited § 1981's application. *See* S. Rep. No. 101-315, at 14 (1990) (finding "a compelling need for legislation to overrule the *Patterson* decision and ensure that federal law prohibits all race discrimination in contracts"). Given these inclusive in-tentions, we find it difficult to believe that Congress would have sought to exclude from § 1981's protections the large portion of the employees in this country who work under at-will employment contracts. As other courts have noted, excluding at-will employees from § 1981 protection "would be to allow use of the ubiquitous at-will doctrine as leverage to incite violations of our state and federal laws." *Fadeyi*, 160 F.3d at 1052 (quotation omitted); *see also Skinner*, 253 F.3d at 340 n.1; *Lauture*, 216 F.3d at 264.

Abbott does not address any of these strong arguments in favor of finding that at-will employees can state claims under § 1981. Instead, Abbott relies solely on *Gonzalez*, stating simply that *Gonzalez* is the last word on the issue in this circuit and that we should follow it. The statements

in *Gonzalez* regarding the applicability of § 1981 to discriminatory termination claims by at-will employees are plainly dicta. Moreover, even if we were to follow the dicta in *Gonzalez*, it would not be entirely helpful to Abbott in this case. *Gonzalez* involved an at-will employee's § 1981 claim for discrimination in its lay-off practices. *Gonzalez*, 133 F.3d at 1035. A central component of the reasoning in *Gonzalez* was that since employment at will lacks a term of duration, at-will employees may not be able to state a § 1981 claim based on termination or lay-off—something in which they have no contractual rights. *Id.* ("Arguably, since Gonzalez was an employee at will, and did not have any contractual rights regarding the term of her employment, she cannot claim that she was discriminated against with respect to Ingersoll's lay-off."). Walker's § 1981 claim, however, relates to discrimination in promotion and pay, not termination or lay-off. Therefore, our reasoning in the *Gonzalez* dicta is of questionable application here.

### III.  Conclusion

For the reasons stated above, we hold that Walker's at-will employment relationship with Abbott is sufficiently contractual in nature to maintain a § 1981 action for discrimination in promotion and pay. Therefore, the district court's decision to dismiss Walker's individual § 1981 claim is REVERSED and the case is REMANDED.

A true Copy:

      Teste:

 

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*