**Eugene BAMPOE, Plaintiff,**

**v.**

**COACH STORES, INC., Defendant.**

**No. 98 Civ. 5988(JSR).**

United States District Court,
S.D. New York.

March 30, 2000.

Peter G. Eikenberry, New York City, for plaintiff.

Lauren Reiter Brody, Rosenman & Colin, LLP, New York City, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

The Complaint herein alleges employment discrimination under Title VII of the Civil Rights Act of 1964, under 42 U.S.C. § 1981, and under the New York State and New York City Human Rights Laws. Shortly after commencement of the action, defendant moved to dismiss.[1] On August 31, 1999, the Honorable Ronald L. Ellis, United States Magistrate Judge, issued a Report and Recommendation (the "Report") recommending dismissal of those of plaintiff's Title VII claims as allege discriminatory discharge and retaliatory discharge, but otherwise denying the motion. Full familiarity with that Report, and with the relevant allegations of plaintiff's Complaint, is here presumed.

Both parties timely submitted written objections to the Report, as a result of which the Court undertook *de novo* review of the motion and the underlying record. Having done so, the Court adopts Judge Ellis' recommendations substantially for the reasons stated in his Report, except in the following two respects:

■ *First*, with respect to plaintiff's claim of hostile work environment, Judge Ellis concluded that Title VII's 300-day statute of limitations did not bar consideration of plaintiff's allegations of certain earlier events because a claim of "hostile environment" inherently presupposes a "continuing violation" *See* Report at 9 (citing *Gregg v. New York State Dep't of Taxation & Finance*, No. 97 Civ. 1408(MBM), 1999 WL 225534 (S.D.N.Y. Apr.19, 1999)). Notwithstanding *Gregg*, however, this Court is of the view that, under the law of the Second Circuit, hostile work environment claims fare no differently under "continuing violation" analysis than do other claims grounded in Title

VII. For example, in *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir.1998), the Court of Appeals applied traditional continuing violation analysis to plaintiff's hostile work environment claims, found no continuing violation, and then proceeded to consider only incidents that were not time-barred in assessing the viability of the plaintiff's claims. *See Quinn, · supra*, at 765–66; 767–78.

This conclusion, however, does not change the Court's acceptance of Judge Ellis' recommendation that the hostile environment claim not be dismissed on this motion, because the Court concludes that, even applying traditional "continuing violation" analysis, the allegations of the Complaint, read most favorably to plaintiff, preclude this Court from concluding at this stage that plaintiff cannot prove sufficient facts to prove a continuing violation so far as his hostile environment claim is concerned. *See* Complaint at ¶¶ 19; 21; 26. Accordingly, plaintiff's hostile environment claim survives dismissal at this stage.

■ *Second*, while the Court once believed it was "settled law" that the contract clause of § 1981 did not apply to at-will employees,[2] recent decisions in other Circuits have cast doubt on this belief. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015 (4th Cir.1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048 (5th Cir.1998). Upon further analysis, the Court now concludes that an "at will" employee may have a "contractual relationship" with his employer in certain (though by no means all) respects, and that the determination of what those respects are—and whether, therefore, § 1981 is applicable to alleged discrimination in those respects—is partly a function of the law of the state in which

---

1. The Complaint also named Professional Security Bureau, Ltd. as an additional defendant to Coach Stores, Inc., but on September 17, 1999, on the parties' consent, Professional Security Bureau, Ltd. was dismissed as a defendant with prejudice. *See* Order, 9/17/99.

2. *See Brown v. Sara Lee Corp.*, No. 98 Civ. 1593(JSR), 1998 WL 809518, at *3 (S.D.N.Y. Nov.19, 1998). This, however, was only one of several independent grounds on which the Court dismissed the § 1981 claim in *Brown*.

the "at will" employment exists (here New York) and partly a function of the particular factual circumstances surrounding plaintiff's employment. *Cf. Curtis v. DiMaio,* 46 F.Supp.2d 206 (E.D.N.Y.1999). Because at this early stage of the instant case the facts have not been developed sufficiently to allow meaningful application of the relevant aspects of state law to the plaintiff's § 1981 claim, the motion to dismiss that claim must be denied at this time.

In sum, defendant's motion to dismiss is granted as to plaintiff's claims of discriminatory discharge and retaliatory discharge under Title VII, and denied in all other respects. The case is remitted to Magistrate Judge Ellis for further pre-trial preparation.

SO ORDERED.

## REPORT AND RECOMMENDATION

ELLIS, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Eugene Bampoe ("plaintiff") brings this action alleging unlawful racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C § 2000e *et seq.,* 42 U.S.C. § 1981, the New York Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8–107 *et seq.* ("NYCHRL"). Defendants Coach Stores, Inc. ("Coach") and Professional Security Bureau, Ltd. ("PSB") (together "defendants") move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that defendant Coach's motion be **GRANTED** in part and **DENIED** in part, and that defendant PSB's motion be **GRANTED.**

## II. FACTUAL BACKGROUND

Plaintiff, a fifty-five year old black man, is a citizen of Ghana. Compl. at ¶ 1.[1] Plaintiff began his work at Coach in May 1983 as a part-time security guard at Coach's flagship store, *Id.* at ¶ 7. In May 1991, Coach transferred plaintiff to its headquarters where he came under the supervision of Rick Bloom ("Bloom"), the Senior Facilities Manager at Coach. *Id.* at 10–11. In January 1993, plaintiff accepted a full-time position as Supervisor of Security at Coach, and continued in this position through December 1996. *Id.* at ¶¶ 13–14.

From May 1983 to January 1994, plaintiff was compensated for his work at Coach by Service Lock, Inc. ("Service Lock"), a security contractor to Coach. *Id.* at ¶¶ 8–9. In January 1994, Bloom informed plaintiff that PSB would replace Service Lock as security contractor to Coach and, allegedly under instructions from Bloom, plaintiff filled out an employment application for PSB. *Id.* at ¶ 15–16. From January 1994 until his termination as supervisor of security, plaintiff received compensation for his work at Coach from PSB. *Id.* at ¶ 17.

While employed at Coach, plaintiff alleges that Bloom "constantly" made derisive and offensive remarks against people of African descent and Latinos, and would act inappropriately towards female employees. *Id.* at ¶¶ 19–28. Plaintiff alleges that Bloom "continuously referred to black people as 'niggers' and to Hispanics as 'spics' in Bampoe's presence" and generally used racial epithets (*Id.* at ¶¶ 19, 26); "frequently" made offensive comments to African–American and Latino employees, i.e., that they were only capable of "sweeping the floor of McDonalds" (*d.* at ¶ 21); would "often look down a female Coach employee's blouse or bend down to look up her skirt" (*Id.* at ¶ 24); and approached Bampoe in the Coach parking lot, "just before Bampoe left for his vacation," and said that he "hoped that they lock Bampoe up

---

**1.** "Compl." refers to the Amended Complaint, dated September 30, 1998.

over there in Africa and never let him leave." *Id.* at ¶ 28.

Plaintiff's complaint states, upon information and belief, that "in an attempt to cover-up Bloom's wrongdoing, Bampoe was terminated by Bloom, because Bampoe was a witness to many instances of racial and sexual harassment by Bloom and because Bampoe had objected to the misconduct of Bloom ..." *Id.* at ¶ 35. Furthermore, plaintiff alleges that "Bloom fired Bampoe because [sic] his knowledge of and objection to Bloom's misconduct against minority and female employees and because Bampoe was a threat to Bloom's position at Coach, and because Bampoe was a black person over the age of 50." *Id.* at ¶ 37.

Plaintiff alleges that, pursuant to Coach's guidelines, plaintiff took vacation commencing on December 21, 1996. *Id.* at ¶ 27. On January 5, 1997, the day before plaintiff was to return to work, he received a telephone call from a person who identified himself as Jason Grella ("Grella"), Director of PSB. In that conversation, Grella told plaintiff that he no longer worked for Coach and instructed him to report for work at PSB instead, *Id.* at ¶¶ 32–33. The next day, Grella told plaintiff that, while he no longer worked for Coach, he was being promoted from the position of "site supervisor" to "site inspector." *Id.* at ¶ 34. However, according to plaintiff, the "promotion" resulted in plaintiff's salary being reduced from the $560 per week plus overtime he received while working for Coach, to $400 per week. *Id.* On September 30, 1997, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the defendants. On or about May 26, 1998, plaintiff received notice of a right to sue from the EEOC. *Id.* at ¶¶ 39–40. Plaintiff filed a complaint in this matter on August 21, 1998, and an amended complaint on October 6, 1998. Defendants filed the instant motions to dismiss on November 3, 1998.

Plaintiff's amended complaint contains eight claims, all of which are asserted against both defendants. Plaintiff alleges retaliatory discharge under Title VII (first claim); discriminatory discharge under Title VII (second claim); hostile work environment (third claim); discriminatory employment practices under Title VII (fourth claim); retaliatory discharge under NYSHRL (fifth claim); discriminatory discharge under NYCHRL (sixth claim); discriminatory practices under NYSHRL (seventh claim); and a violation of § 1981 (eighth claim).

In its motion, Coach seeks dismissal of all claims in the amended complaint. Coach argues that: (1) plaintiff's Title VII, § 1981 and state claims are untimely; (2) plaintiff's claims should be dismissed because he was not an employee of Coach for Title VII purposes; (3) plaintiff cannot allege a prima facie case of discrimination or retaliation; and (4) plaintiff does not state a claim under § 1981.

PSB argues that (1) plaintiff's hostile work environment and discrimination claims are time-barred under applicable statue of limitations; (2) plaintiff fails to make out discriminatory and retaliatory discharge claims; and (3) PSB cannot be liable for plaintiff's third, fourth, fifth, sixth, seventh and eighth claims because plaintiff failed to allege that he notified PSB of Bloom's alleged discriminatory acts.

In a letter to the Court, dated December 4, 1998, PSB informed the Court that after plaintiff was transferred from the Coach location, plaintiff's replacement as Site Supervisor at the Coach location was an African–American male, rather than a white male, as plaintiff had originally claimed. *See* Thomas Aff. at ¶ 3.[2] After verifying this information, plaintiff withdrew "all allegations in his amended complaint and otherwise before the Court *that he was replaced by a white person* when he was terminated from his employment at Coach

---

**2.** "Thomas Aff." refers to the Affidavit of Regina Thomas, dated December 4, 1998.

and all arguments in his memorandum of law that necessarily rely on the allegation that his replacement was white." *See* 12/10/98 Eikenberry Letter (emphasis in original).[3]

## III. ANALYSIS

A Rule 12(b)(6) motion should be granted "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Scotto v. Almenas,* 143 F.3d 105, 109–10 (2d Cir.1998) (quoting *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996)). "The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984)).

In a motion for judgment on the pleadings, all allegations of fact by the non-moving party must be accepted as true and construed in the light most favorable to that party. *See, e.g., Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989); *Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979) (citing *Escalera v. New York City Hous. Auth.,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970)). A court should draw all reasonable inferences in favor of the plaintiff, and should not dismiss the complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert.*

*denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

## A. Timeliness of Claims

Coach asserts that plaintiff's Title VII and § 1981 claims are time-barred and should be dismissed. PSB argues that plaintiff's third and fourth claims (hostile work environment and discriminatory employment practices, respectively) are time-barred because plaintiff's allegations occur prior to the 300–day cutoff for discriminatory allegations under Title VII. Both defendants argue that plaintiff does not allege with specificity discriminatory acts that fall within the 300–day time period. Plaintiff counters that (1) even if certain allegations are time-barred for Title VII purposes, they are still admissible as evidence of the discriminatory and retaliatory motives of defendants; and (2) plaintiff's hostile work environment claim falls under the continuing-violation exception to Title VII, and is thus timely.

### 1. Title VII

Pursuant to 42 U.S.C. § 2000e–5(e)(1), in order to bring a civil suit under Title VII, a plaintiff must file a charge with the EEOC within 180 days of the alleged discriminatory misconduct. If the charge is first filed with a state or local agency where the state or locality has a law forbidding such conduct, as New York does, plaintiff's time to file a charge with the EEOC is extended to 300 days. *See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). This requirement functions as a statute of limitations because discriminatory incidents not timely charged before the EEOC will be time-barred in district court, *Id.* (citing *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996); *Butts v. City*

---

**3.** "12/10/98 Eikenberry Letter" refers to a letter from plaintiff's counsel to the Court, dated December 10, 1998. Specifically, plaintiff withdrew paragraphs 29 and 38 of the amended complaint as well as the reiteration of those allegations in paragraphs 43, 46, 49, 51, 53, 55 and 57. Plaintiff also withdrew the words "... and replacing him with a white man who is a citizen of the United States ..." found on page 11, paragraph 58 of the amended complaint. *See* Letter addressed to the Court from plaintiff's counsel, dated January 5, 1999.

*of New York,* 990 F.2d 1397, 1401 (2d Cir.1993)). Because plaintiff's charge was filed with the EEOC on September 30, 1997, plaintiff may only include incidents alleged to have occurred after December 5, 1996. However, where plaintiff can show that the acts complained of constitute a continuing violation of his civil rights, the statutory period may be extended.

█ The continuing-violation exception "extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." *Quinn,* 159 F.3d at 765 (emphasis omitted) (quoting *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir. 1998)). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hospital,* 10 F.3d 46, 53 (2d Cir.1993). However, a continuing violation may be found "where there is proof of specific ongoing discriminatory polices [sic] or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994). Additionally, courts in this Circuit disfavor the continuing violation argument. *Bawa v. Brookhaven Nat'l Laboratory, Inc.* 968 F.Supp. 865, 868 (E.D.N.Y.1997) (citing *Van Zant,* 80 F.3d at 713); *Blesedell v. Mobile Oil Co.,* 708 F.Supp. 1408, 1415 (S.D.N.Y.1989).

As noted above, plaintiff may only allege discriminatory Title VII acts occurring on or after December 5, 1996. The only alleged discriminatory act that the complaint specifies occurred after that date was the comment that Bloom "hoped they locked Bampoe up over there in Africa and never let him leave." Compl. at ¶ 28. The complaint states that this comment was made by Bloom to Bampoe "just before Bampoe left for his vacation." *Id.* Plaintiff alleges

that his last day of work with Coach was on December 20, 1996. *Id.* at ¶ 26. Therefore, any actionable conduct must have occurred between December 5 and December 20, 1996. A reasonable inference is that the use of the phrase "just before" by plaintiff places the comment within the applicable time frame.

Plaintiff alleges that "[i]n late 1995," Bloom told plaintiff, "I thought you Africans drowned your daughters." Compl. ¶ at 20. This statement falls outside of the statutory period. The remainder of plaintiff's allegations in the complaint are either conclusory or vague and contain no time-frames ("[d]uring his employment with Coach, Bloom continuously referred to black people as 'niggers' and to Hispanics as 'spics' in Bampoe's presence" *Id.* at ¶ 19; plaintiff witnessed "Bloom's frequent comments to minority employees" including that Coach was not on "colored people's time," and that African–American and Latino employees were only capable of "sweeping the floor at McDonalds." *Id.* at ¶ 21; plaintiff "continuously heard Bloom use racial epithets in addressing minority employees as set forth above up until and including Bampoe's last day of work at Coach on December 20, 1996." *Id.* at ¶ 26). It is impossible for the Court to tell whether the claims above fell into the sixteen-day window that plaintiff has allowed himself. However, whether all or some of the above allegations fell outside of the statutory period, the Court must now turn it's attention to whether plaintiff has established a continuing violation. The Court concludes that he has not.

█ Since the only act alleged to have occurred within the statutory time period is Bloom's statement on or about December 20, 1996, plaintiff's complaint must allege a policy of discrimination, or discrimination that was unremedied by defendants for so long that it constitutes a policy of discrimination. Plaintiff's complaint does neither. "[T]he mere continuation of a discriminatory act's effects, when the act itself occurred prior to the pertinent limi-

tations period, is not sufficient to support recovery under Title VII." *Ass'n Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.) (citation omitted), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847(1982). "Completed acts such as termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing nature.'" *Gilliard v. New York City Public Library*, 597 F.Supp. 1069, 1077 (S.D.N.Y.1984).

A reading of the complaint reveals that plaintiff has not pled a continuous policy of discrimination or alleged a discriminatory pattern at Coach sufficient to toll the statutory period. The complaint does not allege that plaintiff ever reported the alleged discrimination to anyone at Coach or PSB. Rather, the complaint alleges, in conclusory fashion, that between 1988 and May of 1997, there was "a continuous pattern and practice of pervasive race, gender and age discrimination" at Coach. *See* Compl. at ¶ 41. However, a conclusory allegation of a continuing violation will not suffice. *See Alveari v. Am. Int'l Group, Inc.*, 590 F.Supp. 228, 231 (S.D.N.Y.1984). Additionally, the assertions and "statistics" contained in the complaint bear no relation to plaintiff's retaliation case. *See* Compl. at ¶ 41(a)–(k). The allegations outlined above are insufficient to allege a continuing violation. As a result, I find that the only timely discriminatory allegation in the complaint is the December 20, 1996 statement attributed to Bloom. The remaining allegations should be dismissed as time-barred.

### 2. Hostile Work Environment

■ The continuing-violation exception also applies to plaintiff's hostile work environment claims. "By its nature, a claim of 'hostile environment' discrimination turns on the existence of a continuing violation, rather than on any individual offensive act." *Gregg v. New York State Dept. of Taxation & Finance*, 1999 WL 225534 (S.D.N.Y. Apr.19, 1999) (quoting *Engel-*

*mann v. Nat'l Broadcasting Co.*, 1996 WL 76107, at *15 (S.D.N.Y. Feb.22, 1996)). As long as one incident of discrimination occurred within the 300–day period prior to the filing of plaintiff's EEOC charge, plaintiff's hostile work environment charge would be timely. *Id.* Because it is reasonable to infer that Bloom's statement about locking the plaintiff up in Africa occurred within the 300–day limitations period, plaintiff's hostile work environment claim is timely.

### 3. Section 1981 Claim

■ Plaintiff's claims under § 1981 are subject to a three-year statute of limitations. *See Wilson v. Fairchild Republic Co., Inc.*, 143 F.3d 733, 738 n. 5 (2d Cir. 1998); *Tadros v. Coleman*, 898 F.2d 10, 12 (2d Cir.1990). Plaintiff filed his complaint on August 21, 1998, therefore he may only allege discriminatory acts occurring after August 21, 1995. Plaintiff claims that his last day at Coach was December 20, 1996. Therefore, to the extent that plaintiff alleges that his discharge from Coach amounted to a violation of § 1981, his cause of action is timely.

### B. Employer Status

■ Title VII, the NYSHRL and the NYCHRL prohibit an "employer" from engaging in discriminatory practices. 42 U.S.C. § 2000e–2(a); N.Y. Executive Law § 296(1)(a); N.Y.Admin.Code § 8–107. In order for a court to exercise jurisdiction over a defendant in a Title VII case, the defendant must meet the statutory definition of an "employer." *See Serrano v. 900 5th Avenue Corp.*, 4 F.Supp.2d 315, 316 (S.D.N.Y.1998). Generally, courts recognize that "the term 'employer,' as it is used in Title VII, is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities, regardless of whether that party may technically be described as an 'employer' of an aggrieved individual as that term has generally been defined at common law." *Spirt v. Teachers Ins. &*

*Annuity Ass'n,* 691 F.2d 1054, 1063 (2d Cir.), *vacated on other grounds,* 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983) (quoting *Vanguard Justice Society, Inc. v. Hughes,* 471 F.Supp. 670, 696 (D.Md.1979)). In determining whether a defendant is an "employer" within the meaning of Title VII, the focus is on "the amount of control or supervision a defendant exerts" over the plaintiff. *Rivera v. Puerto Rican Home Attendants Services, Inc.,* 922 F.Supp. 943, 949 (S.D.N.Y.1996). Particular emphasis should be placed on whether a defendant controls the "means and manner" by which work is accomplished. *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993).

 Coach's argument that it was not plaintiff's employer does not address whether Coach significantly affected plaintiff's access to employment opportunities. Rather, Coach argues, without the benefit of case law, that a reading of plaintiff's complaint belies the fact that plaintiff was employed first at Service Lock and then at PSB, rather than at Coach. In support of this proposition, Coach notes that in their answer, PSB admits that plaintiff was its employee. Coach Mem. at p. 7.[4] Coach further points to plaintiff's assertion that from 1983 until January 1994, he received his salary from Service Lock; that upon notice that PSB would be replacing Service Lock as Coach's security provider, plaintiff filled out an employment application for PSB; that from 1994 until December 1996, plaintiff received his salary from PSB; and that PSB subsequently promoted plaintiff to the position of site inspector. Coach Mem. at p. 8. Coach asserts that these factors are determinative on the issue of Coach's employer status for purposes of Title VII. This Court disagrees with Coach's position.

4. "Coach Mem." refers to the Memorandum in Support of Coach's Motion to Dismiss, filed on November 3, 1998.

5. Because New York courts require the same standard of proof for claims brought under

In his amended complaint, plaintiff sufficiently alleges that Coach affected his access to employment opportunities in a significant way. For instance, plaintiff alleges that, at least since 1991, while he worked with Coach, he was supervised by Coach employees. Compl. at ¶ 11. Coach transferred plaintiff from its flagship store location to its headquarters. *Id.* at ¶ 10. Plaintiff also alleges that in January 1993, Coach offered plaintiff the opportunity to work full-time at Coach and told him that "he would soon be placed directly on Coach's payroll." *Id.* at ¶ 12. Coach also "instructed" plaintiff to apply for a position with PSB, when Coach retained it as a security contractor. *Id.* at ¶ 16.

That plaintiff was paid by PSB, rather than by Coach itself, is not conclusive on the issue of whether he was solely PSB's employee. Coach does not contest the suggestion that it controlled plaintiff's work location, the means and manner of plaintiff's performance, and his work hours. *See, e.g., Amarnare v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 611 F.Supp. 344, 349 (S.D.N.Y.1984), *aff'd,* 770 F.2d 157 (2d Cir.1985) ("a [temporary worker] whose salary is paid by one entity while his services are engaged on a temporary basis by another is an employee of both entities"). Here, plaintiff's allegations are sufficient to bring Coach within the definition of "employer." The Court finds that plaintiff was an employee of Coach for Title VII purposes.

## C. Title VII Prima Facie Case[5]

 In order to establish a prima facie case of discriminatory discharge, plaintiff must show (1) membership in a protected class, (2) that he satisfactorily performed the duties of his position; (3) that he was the subject of adverse employment action; and (4) the adverse employment action

the NYSHRL as those brought under Title VII, I will address plaintiff's NYSHRL and Title VII claims simultaneously. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995).

occurred under circumstances giving rise to an inference of discrimination. A plaintiff often establishes this last prong by showing that the position was ultimately filled by a person not of the protected class. *See Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.1997); *Scaria v. Rubin,* 117 F.3d 652, 653 (2d Cir.1997). A plaintiff's burden of establishing a prima facie case has been described as minimal. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

█ Plaintiff meets the first prong because he is a black and from Ghana. As for the second prong, the Court will assume that plaintiff satisfactorily performed the duties of his position. Plaintiff satisfies the third factor because he allegedly received a net cut in pay when he was "promoted." *See* Compl. at ¶ 34. However, with respect to the fourth element, the Court finds that plaintiff has not sufficiently pled facts that establish that the employment action occurred under circumstances giving rise to an inference of discrimination. As noted *supra,* plaintiff concedes that his position was not ultimately filled by a white person as originally alleged. *See* 1/5/99 Eikenberry letter at p. 1; Thomas Aff. at ¶¶ 3–6. Plaintiff has failed to show that the position was ultimately filled by a person not of the protected class. This undermines his attempt to establish a *prima facie* case of Title VII discrimination. *See Ticali v. Roman Catholic Diocese of Brooklyn,* 41 F.Supp.2d. 249, 262 (E.D.N.Y.1999); *Umansky v. Masterpiece Int'l Ltd.,* 1998 WL 433779, *3 (S.D.N.Y. July 31, 1998) (that a white female plaintiff "was replaced by another white female weighs

heavily against an inference that she was discriminated against as a white female."); *Estepa v. Shad,* 652 F.Supp. 567, 570 n. 5 (E.D.N.Y.1987) ("[U]nless a Title VII plaintiff is replaced by a member of a nonprotected class, proof of intentional discrimination appears extremely difficult, if not practically impossible").[6] Moreover, plaintiff has failed to identify any circumstances from which the Court might otherwise infer discrimination. Therefore, plaintiff's Title VII discriminatory discharge claim should be dismissed against both defendants.

### D. The Retaliatory Discharge Claim

Both defendants move to dismiss the retaliation claim on the grounds that plaintiff fails to state a prima facie case. PSB and Coach argue that plaintiff does not sufficiently allege that he engaged in a "protected activity" and Coach further alleges that plaintiff has not shown that there was adverse employment activity.

█ In order to state a prima facie case of retaliatory discharge, plaintiff must show (1) participation in a protected activity known to the defendant; (2) an employment action adverse to the plaintiff; and (3) a causal connection between the protected activity and the adverse employment decision. *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996).[7]

#### 1. Protected Activity

█ To establish the first element—participation in a protected activity—plaintiff need not prove that the conditions against which he protested actually amounted to a violation of Title VII. *See*

---

6. The Court notes that the facts in this case are unlike those in *Meiri v. Dacon,* where the Second Circuit declined to require a Title VII plaintiff to demonstrate that he was replaced by a person outside of the protected class in cases where the position was ultimately eliminated. *See Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir.1985).

7. The same test applies to plaintiff's retaliation claim brought pursuant to the NYSHRL (fifth claim). *See, e.g., Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1177 (2d Cir.1996).

*Quinn,* 159 F.3d at 769 (citing *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988)). Rather, he must demonstrate only that he had a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Quinn,* 159 F.3d at 769.

Plaintiff alleges that on one occasion he told Bloom, his supervisor at Coach, that Bloom's racist remarks were "not appropriate" and would "often gave Bloom a 'look'" in response to Bloom's racist comments to other employees of color. Compl. at ¶¶ 20, 22. Plaintiff argues that his comment to Bloom and the "looks" he gave constituted "protected activity" for the purposes of a Title VII retaliation claim. Pl.Mem. at 21.[8] The Court disagrees.

■ Informal complaints, as opposed to the formal filing of a complaint with an agency, constitute protected activity under Title VII. *See, e.g., Tomka v. Seiler Corp.,* 66 F.3d 1295, 1308 (2d Cir.1995) (citing *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 65 (2d Cir.1992)); *Dortz v. City of New York,* 904 F.Supp. 127, 157 (S.D.N.Y.1995); *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990). An individual might, for example, lodge complaints with management, write critical letters to customers, or express support for co-workers who have filed formal charges. *See Sumner,* 899 F.2d at 209; *Del Castillo v. Pathmark Stores, Inc.,* 941 F.Supp. 437, 438 (S.D.N.Y.1996). A complaint alleging discrimination may also simply be an objec-

tion voiced to the employer. *See Querry v. Messar,* 14 F.Supp.2d 437, 450–51 (S.D.N.Y.1998).

■ However, in the case at bar, plaintiff does not allege that he complained to anyone, at either Coach or PSB, about Bloom's conduct. During plaintiff's work for Coach, the sole utterance with regard to Bloom's alleged comments occurred in 1995. In response to a derogatory comment about Africans, plaintiff told Bloom "that such a remark was not appropriate." Compl. at ¶ 20. A mere statement to the alleged antagonist, albeit a supervisor employed by a defendant, that a comment was inappropriate does not rise to the level of "protected activity" for a retaliation claim. *See, e.g., Del Castillo,* 941 F.Supp. at 438–39 (holding that simply declining a harasser's sexual advances does not constitute "protected activity" in a Title VII retaliation claim). Moreover, the allegation that plaintiff would often give Bloom a "look" in response to offensive comments falls outside the broadest interpretation of protected activity retaliation claim. Even the cases that plaintiff cites in support of his claims discourage a conclusion that plaintiff engaged in protected activity.[9] The Court finds that plaintiff fails to satisfy the first element of a prima facie case of retaliation.

2. Adverse Employment Action

Coach argues that plaintiff did not suffer any adverse employment action in this case. Coach states that, upon being transferred from the Coach location, PSB "promoted" plaintiff from site supervisor to

8. "Pl. Mem." refers to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, dated November 13, 1998.

9. The cases plaintiff relies upon in defining "protected activity" upheld activity with substantially more initiative than a mere look. *See, e.g., Kotcher, supra,* 957 F.2d at 65 (plaintiff made "an internal complaint to company management, protesting the sexually harassing actions of her supervisor"); *Sastri v. KLM Royal Dutch Airlines,* 1995 WL 746458 (S.D.N.Y. Dec.15, 1995) (plaintiff wrote a ser-

ies of memos to an officer of defendant, protesting perceived discrimination on the basis of her age, gender and national origin); *Gilani v. Nat'l Ass'n of Securities Dealers, Inc.,* 1997 WL 473383 (S.D.N.Y. Aug.19, 1997) (plaintiff openly voiced his concern about racial discrimination to executive vice president of defendant, a vice president of defendant's general counsel's office and to chairman of committee formed by defendant to address racial discrimination issues).

site inspector. Coach Mem. at p. 12. Although PSB fails to raise the issue of adverse employment action, PSB notes that at no time was plaintiff terminated from PSB. Rather PSB states that plaintiff, along with all other PSB employees working at Coach, were transferred to different positions in 1997. *See* PSB Mem. at p. 8, note 2.[10] In the complaint, plaintiff alleges that, although a PSB officer told him that he was being promoted, plaintiff's salary was reduced "from $560 per week plus overtime he had received while working at Coach to $400 per week" in his new position at PSB. Compl. at ¶ 34.

 In order to be actionable in a retaliation context, a transfer must constitute "a materially adverse change in the terms and conditions of employment." *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir.1997) (internal quotations omitted); *see also Dortz v. New York*, 904 F.Supp. 127, 156 (S.D.N.Y.1995). Here, that plaintiff suffered a net loss of salary in the transfer or promotion remains unchallenged by the defendants. The Court finds that plaintiff has sufficiently demonstrated adverse employment action. However, since plaintiff did not engage in protected activity, he is unable to establish the third prong of a *prima facie* retaliation case—the causal connection between the protected activity and the adverse employment action.

Accordingly, I recommend that his retaliation claims be dismissed against both defendants.

## E. Hostile Work Environment Claim

 Plaintiff alleges that he was "forced to work at Coach in an environment permeated with racism and sexism resulting in [his] termination from his position at Coach." Compl. at ¶ 47. A hostile work environment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an in-

timidating, hostile or offensive working environment." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995) (quotation omitted). To prevail on a hostile work environment claim, a plaintiff must demonstrate: "(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996)).

### 1. Discriminatory Intimidation

 To state a hostile work environment claim, plaintiff must allege that the defendants' conduct was "sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). All of the circumstances must be considered to determine whether a reasonable person would find the environment hostile or abusive, and whether the victim subjectively considered it so. *See Tomka*, 66 F.3d at 1305 (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. 367).

 The Supreme Court has set forth a list of non-exclusive factors to be considered in determining whether a given work place is sufficiently "hostile or abusive" to support a Title VII claim. *Harris* 510 U.S. at 23, 114 S.Ct. 367. These include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance;" (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted. *Id.;*

---

**10.** "PSB Mem." refers to PSB's memorandum of law in support of its motion to dismiss

the amended complaint, dated November 2, 1998.

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767–68 (2d Cir.1998).

 "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be 'more than a few isolated incidents of racial enmity.'" *Schwapp*, 118 F.3d at 110 (quoting *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir.1986)). Such incidents "must be repeated and continuous; isolated acts or occasional episodes will not merit relief." *Kotcher v. Rosa & Sullivan Appliance Center*, 957 F.2d 59, 62 (2d Cir.1992). Examining statements attributed to Bloom in their totality, it appears that plaintiff has satisfied the first element of a hostile work environment claim by adequately pleading sufficiently severe discriminatory intimidation.

### 2. Employer Liability

 The Supreme Court recently held that, in the hostile work environment context, an employer is presumed absolutely liable for the discriminatory acts of a victim's supervisor, although the employer may rebut that presumption. *See Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca–Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). However, where the perpetrator is the victim's co-worker, the employer will only be liable where it "provided no reasonable avenue for complaint or knew of the [unlawful activity] but did nothing about it." *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995) (citation omitted).

Since plaintiff alleges that Bloom was his supervisor, plaintiff sufficiently alleges a hostile work environment claim against Coach under *Ellerth* and *Faragher*. Examining the totality of the circumstances,

this Court cannot say that it is "beyond doubt" that the plaintiff can prove no set of facts in support of the hostile environment claim against Coach which would entitle him to relief. *See Scotto v. Almenas*, 143 F.3d 105, 109–10 (2d Cir.1998).

 However, plaintiff does not allege that Bloom was an employee of PSB. Therefore, in order to state a claim against PSB, plaintiff would have to allege that PSB's complaint mechanisms were unreasonable or insufficient, or that PSB knew about Bloom's activity and failed to intervene. Plaintiff does neither. Plaintiff does not allege that anyone at PSB created a hostile work environment. Plaintiff also fails to allege that he even attempted to use PSB's complaint procedures, much less that they were unreasonable. Moreover, plaintiff does not allege that he notified PSB of Bloom's comments. Finally, as noted *supra* at footnote 3, plaintiff withdrew paragraph 29 of his amended complaint.[11] This withdrawn paragraph, albeit in conclusory fashion, would have been the only allegation in the amended complaint to create a nexus between Bloom's conduct and PSB's liability. Thus, the Court finds no basis upon which to impute liability to PSB. Plaintiff's hostile work environment claim should be dismissed as to PSB.

### F. Section 1981 Claim

Plaintiff alleges that the defendants are liable under 42 U.S.C. § 1981 "for not permitting him to be employed in the name of Coach, for terminating his employment at Coach because of discrimination against him as a black man who is a citizen of Ghana ..." Compl. at ¶ 58. Coach argues that plaintiff's § 1981 claim should be dismissed because plaintiff fails to allege that he had any contractual relationship with Coach. PSB argues that this

---

**11.** Paragraph 29 read as follows:

In late December 1996 or early January 1997, PSB entered into a conspiracy with Coach (the "Coach conspiracy") to replace Bampoe at Coach with a white person despite the fact that Bampoe:

 a) was qualified for the position he occupied, and
 b) was competently performing his duties as Security Supervisor at Coach.

claim should be dismissed because plaintiff fails to sufficiently plead employer liability under the statute.

### 1. Claim against Coach

 Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ..." 42 U.S.C. § 1981(a).[12] In order to state a claim under § 1981, plaintiff must show the existence of a contractual relationship. *See Murray v. National Broadcasting Co., Inc.,* 844 F.2d 988, 995 (2d Cir.1988); *Krulik v. Board of Education of New York,* 781 F.2d 15, 23 (2d Cir.1986). Plaintiff's complaint is silent as to whether plaintiff had an employment agreement or contract with Coach. Therefore, it appears to the Court that plaintiff's relationship to Coach was that of employment at will. *See Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 211, 506 N.E.2d 919 (1987) ("[I]t is still settled law in New York that, absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party").

In this circuit, courts are divided as to whether an at-will employee has a contractual relationship with an employee sufficient to support a claim under § 1981. *Compare Bascomb v. Smith Barney, Inc.,* 1999 WL 20853 at *4 (S.D.N.Y. Jan.15, 1999) (dismissing plaintiff's § 1981 claim for a lack of contractual relationship because plaintiff was an at-will employee); *Simpson v. Vacco,* 1998 WL 118155, at *8 (S.D.N.Y. Mar.17, 1998) (same); *Moorer v. Grumman Aerospace Corp.,* 964 F.Supp. 665, 675 (E.D.N.Y.1997) (same); *Moscowitz v. Brown,* 850 F.Supp. 1185, 1192 (S.D.N.Y.1994) (same); *Askew v. May Merchandising Corp.,* 1991 WL 24390, at

*6 (S.D.N.Y. Feb.20, 1991) (same); *with Lazaro v. Good Samaritan Hosp.,* 1999 WL 297483, at *5 (S.D.N.Y. May 6, 1999) (holding that at-will employees have a "contract" with employer for § 1981 purposes); *Curtis v. DiMaio,* 46 F.Supp.2d 206, 212 (E.D.N.Y.1999) (holding the same where plaintiffs brought their claim based on the conditions of their employment); *Harris v. New York Times,* 1993 WL 42773, at *4 (S.D.N.Y. Feb.11, 1993) (holding that at-will employees may bring a § 1981 action).

While the Second Circuit has not ruled directly on the effect of the Civil Rights Act of 1991 of § 1981 and at-will employees, the Fourth and Fifth Circuits have done so. In *Spriggs v. Diamond Auto Glass,* the Fourth Circuit held that in an at-will employment context, "the lack of an agreed upon duration [of employment] does not invalidate the underlying contract itself." 165 F.3d 1015, 1018 (4th Cir.1999) (citing Restatement (Second) of Contracts § 33 (1981)). The court went on to state:

> [w]e have seen no indication that, when drafting the original § 1981 or the amending 1991 Act, Congress intended the term "contract" to have any meaning other than its ordinary one. *See Lane v. Ogden Entertainment, Inc.,* 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998) (" 'Contract' is used in § 1981 in its basic legal meaning...."). Having concluded that an at-will employment relationship is contractual, we hold that such relationships may therefore serve as predicate contracts for § 1981 claims.

165 F.3d at 1018.

The Fifth Circuit has also held that "an employment at-will relationship is a contractual one, even though either party can terminate it without cause." *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.,* 160 F.3d 1048, 1051 (5th Cir.1998). In applying employment at-will to a claim under § 1981, the *Fadeyi* court noted that:

---

**12.** Through the Civil Rights Act of 1991, Congress amended § 1981 by defining the phrase "make and enforce contracts" to include "the making, performance, modification, and ter-

mination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship." 42 U.S.C. § 1981(b).

[t]o hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII. *Fadeyi*, 160 F.3d at 1050. In conclusion, the court stated that "even though an at-will employee can be fired for good cause, bad cause or no cause at all, he or she cannot be fired for an illicit cause." *Id.* at 1051–52.

New York law recognizes that the at-will relationship entails certain contract rights. *See Curtis v. DiMaio*, 46 F.Supp.2d at 211 (citing *Finley v. Giacobbe*, 79 F.3d 1285, 1295 (2d Cir.1996)); *see also Gorrill v. Icelandair/Flugleidir*, 761 F.2d 847, 851–52 (2d Cir.1985); *Agugliaro v. Brooks Bros., Inc.*, 802 F.Supp. 956, 963 (S.D.N.Y.1992) (where at-will employee is terminated for unlawful reason, "the fact that [plaintiff] was an at-will employee would be irrelevant [and] the termination would be unjust and improper"). Because New York law accords contractual rights to at-will employees, this Court finds the reasoning in *Spriggs* and *Fadeyi* persuasive. Therefore, I find that plaintiff had a "contract" with Coach for purposes of his § 1981 claim. I recommend that Coach's motion be denied on this ground.

### 2. Claim against PSB

In order to state a viable § 1981 claim against PSB, plaintiff "must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993). Plaintiff's complaint, as it remains, is devoid of any allegations of discriminatory intent on the part of PSB. Therefore, plaintiff's § 1981 claims should be dismissed as to PSB.

## IV. CONCLUSION

For the reasons articulated above, I recommend that: (1) plaintiff's first, second, fourth, fifth, sixth, and seventh claims be **DISMISSED** against Coach, and (2) plaintiff's entire complaint be **DISMISSED** against PSB.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir.1989) (*per curiam*); 28 U.S.C. §§ 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

August 31, 1999.